UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 25-CR-110-LA-WED

BREEJ PATEL,

Defendant.

---

## PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Zachary Corey, Assistant United States Attorney, and the defendant, Breej Patel, individually and by attorney Brian T. Fahl, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a two-count indictment, which alleges violations of Title 18, United States Code, Sections 1349 and 1956(h).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to Count Two of the indictment set forth in full as follows:

**THE GRAND JURY FURHTER CHARGES THAT:**

9. Beginning by at least November 2024 and continuing until at least May 2025, in the State and Eastern District of Wisconsin and elsewhere,

**BREEJ PATEL, and**
**NIDHAAN KHANNA**

conspired with each other and others, known and unknown to the grand jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

10. Nidhaan Khanna traveled to different locations to pick up fraud proceeds from victims. Breej Patel instructed Khanna where to pick up fraud proceeds and received fraud proceeds from victims himself. When Khanna and Patel picked up fraud proceeds, they largely did so in cash, which is not traceable. Additionally, they would then hand the cash to another individual they did not know in a manner that was not documented. By doing so, Khanna and Patel intended to conceal and disguise the nature, location, source, ownership, and control of the fraud proceeds they picked up or received and delivered to other individuals.

All in violation of Title 18, United States Code, Section 1956(h).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case

were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Breej Patel is a naturalized citizen of the United States who was residing in the State of Indiana.

Starting in Spring of 2025, Breej Patel was picking up cash from victims of fraud perpetuated by individuals who lived in India. He received the specific instructions regarding picking up cash from an individual he knew in India who used the pseudonym "Rocky." Once Patel picked up the cash from the fraud victims, he would then pass that cash along to other members of the conspiracy. Patel received a small percentage of the cash he picked up as payment.

Around the same time, Patel recruited Nidhaan Khanna to pick up cash from fraud victims on Patel's and Rocky's behalf. Patel paid Khanna a percentage of the percentage that he received for picking up the cash proceeds.

Specifically, Patel or "Rocky" would WhatsApp message Khanna a dollar amount and a zip code. Based on Khanna's availability and how far away the zip code was, Khanna would either agree to do the pickup or decline. Rocky would WhatsApp message Khanna detailed information about the victims from whom Khanna would conduct pickups. Rocky would provide Khanna a "password" for the pickups that the victim would have to tell him in order to complete the drop off. Additionally, Rocky would WhatsApp message Khanna a pseudonym to use for the purpose of the pickups.

After Khanna conducted the pickup of cash or gold, he would WhatsApp message a video and/or pictures of himself opening the box of cash or gold and then counting it. He would then drop off the cash or gold proceeds to Breej Patel or another member of the conspiracy.

Breej Patel provided letters that appeared to be from the Federal Trade Commission to Khanna to mail. The return address indicated the letters were from the Federal Trade Commission and the envelopes were stamped in red letters that stated "NOTICE". On April 24, 2025, Khanna mailed the letters at Breej Patel's instruction. The letters claimed to be an "Urgent Legal Notice from the Federal Trade Commission" and indicated that the recipient of the letter was under federal investigation. The letter urges the victim to immediately safeguard assets and cooperate with the Federal Trade Commission by calling a telephone number.

Khanna conducted at least the following pickups at the instruction of Patel and/or Rocky:

| **Date of pick up** | **Location of pickup** | **Ounces of Gold** | **Spot price of gold** | **Cash** | **Approximate Value** |
|---|---|---|---|---|---|
| 3/17/2025 | Battle Creek, Michigan | | | $40,000 | $40,000 |

| | | | | | |
|---|---|---|---|---|---|
| 4/2/2025 | Bardstown, Kentucky | | | $50,000 | $50,000 |
| 4/4/2025 | Ann Arbor, Michigan | | | $57,000 | $57,000 |
| 4/8/2025 | Bardstown, Kentucky | | | $50,000 | $50,000 |
| 4/17/2025 | Moline, Illinois | | | $71,000 | $71,000 |
| 4/29/2025 | Bardstown, Kentucky | | | $40,000 | $40,000 |
| 4/30/2025 | Florida | 51 | $3,328.10 | | $169,733.10 |
| 5/2/2025 | Milwaukee, Wisconsin | | | $50,000 (attempt) | $50,000 |
| Total | | | | | $527,733.10 |

As part of the conspiracy, Breej Patel also received parcels of cash from victims of the fraud. The parcels would be mailed to addresses not associated with Patel and he would pick them up shortly after they were delivered to the address. He would conduct these pickups at the direction of "Rocky." He would then transfer the cash to other members of the conspiracy in a manner similar to cash or gold he or Khanna picked up. FedEx parcel bearing tracking number 8812 9556 8630, which contained $30,000 and was seized on May 22, 2025, was one such parcel. Fedex parcel bearing tracking number 8812 9457 9951, which contained $8,000 and was seized on May 16, 2025, was another such parcel. Additionally, the approximately $2,000 seized from Patel's residence on May 16 was cash he received as part of the scheme.

Additionally, other members of the conspiracy would drive to Breej Patel and drop off gold or cash. Patel would then drop off that cash or gold to different members of the conspiracy. On May 15, 2025, Patel received five ten-ounce gold bars from another member of the conspiracy that he intended to pass to a different member of the conspiracy. That gold, however, was seized by the United States on May 16, 2025.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $500,000 (or twice the value of the property involved). The charge also carries a mandatory special assessment of $100 and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments,

understandings, and agreements with regard to restitution are set forth in paragraph 31 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNT

8. The government agrees to move to dismiss the remaining count of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy to commit concealment money laundering as set forth in the indictment, the government must prove each of the following propositions beyond a reasonable doubt. The elements of the specified unlawful activity of wire fraud are also listed below.

### Conspiracy

(1) The conspiracy as charged in the indictment existed; and
(2) The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

### Concealment Money Laundering

(1) The defendant knowingly conducted or attempted to conduct a financial transaction; and
(2) Some or all of the property involved in the financial transaction was proceeds of wire fraud; and
(3) The defendant knew that the property involved in the financial transaction represented proceeds of some form of unlawful activity; and
(4) The defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership or control of the proceeds of wire fraud.

### Wire Fraud

(1) The defendant knowingly devised or participated in a scheme to defraud; and
(2) The defendant did so with the intent to defraud; and
(3) The scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and

(4) For the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate wire communications to take place.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false,

incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

**Relevant Conduct**

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

**Base Offense Level**

16. The parties agree that the specified unlawful activity (which was not charged) is wire fraud. The base offense level for wire fraud is 6 under Sentencing Guidelines Manual § 2B1.1(a)(1). Based on the below, the parties agree that the total offense level of the specified unlawful activity of wire fraud is 26. Accordingly, the base offense level of the money laundering conspiracy is 26 under Sentencing Guidelines Manual § 2S1.1(a)(1).

17. If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

**Specific Offense Characteristics**

18. The parties agree to recommend to the sentencing court that a 14-level increase for a loss amount over $550,000 is applicable to the specified unlawful activity of wire fraud under Sentencing Guidelines Manual § 2B1.1(b)(1)(H). The parties agree to recommend a two-level increase is applicable to the specified unlawful activity of wire fraud because it resulted in substantial financial hardship to one or more victims (Victim B.G.) under § 2B1.1(b)(2)(A)(iii). The parties also agree to recommend to the sentencing court that a two-level increase is applicable

to the specified unlawful activity of wire fraud because it involved a misrepresentation that the defendant was acting on behalf of a government agency under § 2B1.1(b)(9)(A). The parties also agree to recommend to the sentencing court that a two-level increase is appropriate to the specified unlawful activity of wire fraud because a substantial portion of fraud scheme took place outside of the United States under § 2B1.1(b)(10)(A) & (B).

19. The parties agree to recommend to the sentencing court that a two-level increase is appropriate for the offense of conviction because the defendant was convicted under 18 U.S.C. § 1956 under Sentencing Guidelines Manual § 2S1.1(b)(2)(A)(b).

**Acceptance of Responsibility**

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

**Sentencing Recommendations**

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence of no more than 48 months' imprisonment.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or

supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

**Fine**

28. The parties agree to recommend that no fine be imposed by the sentencing court.

**Special Assessment**

29. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

**Restitution**

30. The defendant agrees that he is joint and severally liable with at least Nidhaan Khanna for the following restitution: $40,000 to Victim C.O.; $140,000 to Victim B.G.; $57,000 to Victim A.A.; $71,000 to Victim S.K.; $169,733.10 to Victim A.L.; and $95,000 to Victim C.P. Patel agrees that he owes restitution to any other Victim from whom he directly or indirectly he received money as part of the conspiracy. To the extent the parties are able to identify those additional victims, Patel agrees that he owes those individuals restitution.

**Forfeiture**

31. The defendant agrees that all properties listed in the indictment constitute proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

**Further Civil or Administrative Action**

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

**MISCELLANEOUS MATTERS**

37. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which

defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

**GENERAL MATTERS**

38. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

41. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

**EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

42. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the

government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

43. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4.28.26

B.C. Patel
BREEJ PATEL
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 4/28/26

[signature]
BRIAN T. FAHL
Attorney for Defendant

For the United States of America:

Date: 4/30/2026

Zachary J. Corey
ZACHARY J. COREY
Assistant United States Attorney